# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CATRINA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1756 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catrina Thompson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration ("SSA's") decision denying her application for benefits. For the reasons set forth below, the Court reverses the SSA's decision.

## Background

Plaintiff applied for disability benefits on May 22, 2013, alleging a disability onset date of February 15, 2013. (R. 67, 74.) Her application was initially denied on September 9, 2013, and again on reconsideration on June 3, 2014. (R. 74, 87.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on August 11, 2015. (R. 27-65.) On August 25, 2015, the ALJ issued a decision finding plaintiff not disabled. (R. 12-22.) The Appeals Council denied review (R. 1-3), and plaintiff appealed to this Court. (R. 1062-66.) The Court reversed the ALJ's decision and remanded the case for further proceedings. (R. 1067-74.)

On October 24, 2017, the ALJ held a second hearing. (R. 984-1027.) On December 6, 2017, the ALJ issued a decision finding that plaintiff was disabled from February 15, 2013 through

November 30, 2014, but not thereafter. (R. 961-77.) Plaintiff did not seek review of the decision by the Appeals Council, and the Appeals Council did not otherwise assume jurisdiction. Thus, the ALJ's decision is the final decision of the SSA, reviewable by this Court under 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the SSA must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) whether she is unable to perform any other work existing in significant numbers in the national economy. *Id.*;

*Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the SSA to provide evidence that the claimant can perform work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 15, 2013. (R. 965.) At step two, the ALJ found that from February 15, 2013 through November 30, 2014, plaintiff had the severe impairments of "congestive heart failure; obesity; non-ischemic cardiomyopathy and status post automatic implantable cardioverter-defibrillator." (*Id.*) At step three, the ALJ found that from February 15, 2013 through November 30, 2014, plaintiff had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, and thus she was disabled for that period. (R. 966-70.) However, the ALJ found that since December 1, 2014, plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (R. 970.) At step four, the ALJ found that plaintiff cannot perform her past relevant work but has the residual functional capacity ("RFC") to perform sedentary work with certain exceptions including that she can only occasionally reach overhead and push and pull arm controls with her non-dominant left upper extremity. (R. 971, 976.) At step five, the ALJ found that since December 1, 2014 jobs have existed in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 976-77.)

Plaintiff argues that the ALJ did not provide an adequate explanation for rejecting plaintiff's testimony about the pain, edema, and fatigue she experienced after November 30, 2014. The ALJ said she rejected plaintiff's statements about those conditions because they were inconsistent with the objective and subjective findings in the post-November 30, 2014 medical

records, which showed that: (1) plaintiff had no edema; (2) she repeatedly told her cardiologist that she was not experiencing shortness of breath; (3) her breathing was not labored and her lungs were clear; and (4) there was significant improvement in her left ventricular function. (R. 975-76.) There is some evidence to support the ALJ's view. (*See, e.g.*, R. 894, 899, 1260-61.) However, the record also contains support for plaintiff's contention that, after November 30, 2014, she repeatedly complained to her primary care physician, Dr. Meeks, about shortness of breath, fatigue, and pain. (*See* R. 1244 (11/17/16 medical record stating that plaintiff complained of shortness of breath and "left sided chest wall pain [at] defibrillator site"); R. 1247 (7/22/16 medical record stating that plaintiff was "unable to take Gabapentin due to side effects although it was helping her pain"); R. 1249 (4/29/16 medical record stating that plaintiff had difficulty breathing on exertion and "[s]till [had] sharp pain in anterior chest due to defibrillator"); R. 1252 (1/27/16 medical record stating that plaintiff has "difficulty breathing," "[o]cc[asional] sharp stabbing pain," [o]cc[asional] dull pain," her "[p]ain severity [is] on average 7/10" though "[s]ome days it is worse," and she "[c]an walk about a half block"); R. 1256 (10/27/15 medical record stating that plaintiff has fatigue, chest pain, and difficulty breathing on exertion).) The ALJ does not even address, let alone explain why she rejects, the evidence that contradicts her conclusion, an omission that is fatal to her symptom evaluation.[1] *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [s]he may not ignore entire lines of contrary evidence.").

---

[1] The ALJ appears to limit her consideration to plaintiff's statements made to Dr. Ahmad and does not even address plaintiff's consistent statements regarding shortness of breath, fatigue, and pain made to Dr. Meeks. (*See* R. 976 (focusing solely on plaintiff's statements to Dr. Ahmad).)

4

Plaintiff also argues that the ALJ improperly rejected the 2014 opinion of Dr. Cochran, an agency reviewer, that plaintiff's mental impairments are severe. The ALJ rejected this opinion because: (1) it was rendered before plaintiff started taking an antidepressant prescribed by Dr. Meeks; (2) the mental status examinations performed by Dr. Meeks after plaintiff started taking the medication were normal; and (3) plaintiff did not seek or receive treatment from a mental health professional at any time after the alleged disability onset date. (R. 975.) Given that Dr. Cochran did not examine or treat plaintiff and rendered an opinion on plaintiff's mental condition before plaintiff was treated for it and without the benefit of the post-treatment medical records, the ALJ did not err in rejecting Dr. Cochran's opinion. *See* 20 C.F.R. § 404.1527(c) (instructing ALJs to give "more weight" to medical opinions from treating and examining medical sources than other medical sources).

Finally, plaintiff contends that the ALJ erred in rejecting Dr. Meeks's opinion for the period after November 30, 2014. An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

In July 2014, Dr. Meeks said that plaintiff could stand for less than one hour and sit for less than two hours of a workday, could lift only five pounds, and could never push, pull, climb, balance, kneel, stoop, crouch, or crawl. (R. 228.) The ALJ rejected this opinion because "[t]he

5

[electrocardiogram] testing indicates that the claimant's left ventricular ejection fraction improved significantly in 2015 and as late as November 2016, a myocardial perfusion spectrum test showed only mild left ventricular dysfunction, a mild wall abnormality and an ejection fraction of fifty one percent." (R. 974.) However, test results from 2016, which is what the ALJ cites (*see* R. 1260-61 (11/22/16 myocardial perfusion spectrum test); R. 1267-68 (5/2/16 echocardiogram)), shed little light on plaintiff's condition as of December 1, 2014. Moreover, even if this evidence were probative of plaintiff's condition at the end of 2014, its consistency, or lack thereof, with Dr. Meeks's opinion is only one of several factors the ALJ should have considered in evaluating that opinion. *See* 20 C.F.R. § 404.1527(c). In short, the ALJ's assessment of Dr. Meeks's opinion is flawed and must be revisited on remand.

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [11], denies the SSA's motion for summary judgment [23], reverses the SSA's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**               **ENTERED: October 31, 2018**

**M. David Weisman**
**United States Magistrate Judge**